UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AYAKO HOYAMA, et al., | ECF CASE |
| Plaintiffs, | Case No. 10-cv-6465-BSJ-GWG |
| v. | |
| MAMORU SAITO, TAKAHITO SAKAGAMI, TETSUYA HASHIKURA, HIROMI HASHIKURA, RUMIKO TERMYNA, AMIWORLD, INC, et al., | |
| Defendants | |

# MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF SAKAGAMI DEFENDANTS TO DISQUALIFY PLAINTIFF'S COUNSEL

### (Filed concurrently with Declarations of Florence Rostami, Esq., and Rieko Sakuramoto)

Garth Goldberg
Florence Rostami Law, LLC
708 Third Avenue, 5th Floor
New York, New York 10017
(212) 209-3962
ggoldberg@rostamilaw.com

# Contents

I.   SUMMARY OF ARGUMENT ................................................................................................ 1

II.  FACTUAL BACKGROUND ................................................................................................ 2

    A.   General Nature of the Case ................................................................................................ 2

    B.   Facts Pertinent to This Motion ............................................................................................ 3

III. DISCUSSION ........................................................................................................................ 4

    A.   NO ETHICAL VIOLATION OCCURRED BECAUSE MS. ROSTAMI DID NOT COMMUNICATE WITH AN IDENTIFIED PARTY, NOR DID SHE CAUSE ANOTHER TO DO SO, NOR WAS THERE ANY COMMUNICATION REGARDING THE SUBJECT OF THE REPRESENTATION ................................................................................................ 4

        1.   There was no violation of the Professional Rule since there was no communication about the subject of the representation, and Ms. Rostami did not know the identity of the caller when the communication was initiated by the caller. ................................................... 4

        2.   Unlike the attorneys in the cases relied on by moving parties, Ms. Rostami did not engineer an unethical contact, nor did she use another to do what she could not do .............. 6

    B.   EVEN IF A TECHNICAL ETHICAL VIOLATION WERE TO HAVE OCCURRED, DISQUALIFICATION IS NOT CALLED FOR IN THIS CASE BASED ON A 30-SECOND PHONE CALL INITIATED BY THE ADVERSE PARTY. ...................................................... 9

    C.   CONCLUSION ........................................................................................................... 12

**PLAINTIFF'S BRIEF IN OPPOSITION
TO MOTION TO DISQUALIFY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AYAKO HOYAMA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MAMORU SAITO, TAKAHITO SAKAGAMI, TETSUYA HASHIKURA, HIROMI HASHIKURA, RUMIKO TERMYNA, AMIWORLD, INC, et al.,<br><br>    Defendants | ECF CASE<br><br>Case No. 10-cv-6465-BSJ-GWG<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF SAKAGAMI DEFENDANTS TO DISQUALIFY PLAINTIFF'S COUNSEL**<br><br>(Filed concurrently with Declarations of Florence Rostami, Esq., and Rieko Sakuramoto) |

Plaintiffs, through their Counsel of Record, Florence Rostami Law, LLC, hereby submit the following Memorandum of Law in Opposition to the motion of the Sakagami Defendants to Disqualify Florence Rostami, Esq. and her law firm as counsel for plaintiffs in this case. For the reasons that follow, this motion must be denied.

## I.    SUMMARY OF ARGUMENT

No ethical violation whatsoever occurred here. Ms. Rostami only overheard a brief conversation initiated by an unidentified caller, who was calling and harassing her client late at night. Ms. Rostami did not initiate the call, nor could it be said that she "cause[d] another" to communicate with a represented party, nor was there any communication regarding the subject matter of this case.

Even if an ethical violation were to have occurred, the facts in this case do not justify the court, in the exercise of its discretion in this case, to disqualify plaintiff's counsel. The cases

cited by moving party involved different factual situations where disqualification was justified in the court's discretion. The facts of each of these cases are discussed below. This case is unlike any of those.

These points are discussed in further detail hereafter.

## II.    FACTUAL BACKGROUND

### A.    General Nature of the Case

This case seeks to recover approximately $11.4 million lost to the defendant swindlers in a Ponzi-like fraud scheme, with classic elements of affinity fraud, through various fraudulent schemes promoted by the defendants.[1] [First Amended Complaint (FAC) ¶1]  The evidence will show that defendants Saito and moving-party Sakagami used at least five different fraudulent investment vehicles. [FAC ¶2-8]  These had varying structures and underlying assets – one involved a currency transaction with the Venezuelan Bolivar, the second was an oil investment, and the last three involved investments in equities.  These investments all were in related entities controlled by Saito and Sakagami.   [FAC ¶2-8, 90 - 200]

In the case of the currency and the oil investments, according to evidence to be presented, Saito and Sakagami "guaranteed" investors' principal with an insolvent Swedish financial company that they owned and controlled. In the case of one of the equity investments, Amiworld, Inc., Saito and Sakagami dissolved the Nevada corporation without shareholder notice or meeting in order to avoid the consequences of their fraud. [FAC ¶2-8, 90 - 200]  They then reincorporated Amiworld in Panama, but the new company has not issued shares to its investors.  S aito and Sakagami gave various explanations to explain to investors why the

---

[1] It is estimated that the Defendants' schemes world-wide may have pulled in over $100 million.  It is anticipated that plaintiffs will seek to amend the complaint to add additional victims.

PLAINTIFF'S BRIEF IN OPPOSITION
TO MOTION TO DISQUALIFY

investors were unable to withdraw money from the schemes.  Counsel continues to learn of previously unknown schemes daily.

The evidence will show that other persons aided Saito and Sakagami in the specific fraud alleged here.  Financial "advisers" Tetsuya Hashikura ("Hashikura"), Hiromi Haskikura ("Hiromi") and Rumiko Termyna ("Termyna") distributed the documents throughout the local Japanese community and convinced investors to engage in what were described as sure-fire investments.  Hashikura, Hiromi and Termyna were respected in the community they preyed on.  Termyna used her position as an insurance broker for MetLife, Inc. to give legitimacy to Saito and Sakagami's investments.  The Hashikuras used their position of respect in the community as retired school teachers to lend weight and credibility to the fraud schemes.

### B.     Facts Pertinent to This Motion

Rieko Sakuramoto is not a party to this case, but she is sister of and daughter to plaintiffs who were swindled by the defendants. [Declaration of Rieko Sakuramoto, ¶2]  What is at issue on this particular motion is brief phone call that took place when someone, unknown and unidentified at the time, called Mrs. Sakuramoto on her cell phone at 10:15 pm at night, apparently to attempt to intimidate her from contacting other victims of the defendants' scams.  [Declaration of Rieko Sakuramoto, ¶11-19] [Declaration of Florence Rostami, Esq., ¶10-20]  Having now identified himself as the miscreant, Defendant Sakagami seeks to disqualify counsel for plaintiffs for being witness to defendant's late-night harassment.  To state the issue is to show this motion must fail.

### III.  DISCUSSION

**A.   NO ETHICAL VIOLATION OCCURRED BECAUSE MS. ROSTAMI DID NOT COMMUNICATE WITH AN IDENTIFIED PARTY, NOR DID SHE CAUSE ANOTHER TO DO SO, NOR WAS THERE ANY COMMUNICATION REGARDING THE SUBJECT OF THE REPRESENTATION**

Moving parties submit no factual declarations in support of their motion, and cite only five cases in support.[2] These are: A Queens County Trial Court decision, a Connecticut District Court case, a New Mexico disciplinary case, a Northern District case and one District Court case from this district.  Not only have the moving parties failed to discuss the facts of *any* of these cases, the moving parties have somehow overlooked Second Circuit law on point which would show why this motion is not well taken.  Examination of the facts of these cases, the applicable Professional Rule, as well as applicable authority from this Circuit shows that this motion must be denied.

**1.   There was no violation of the Professional Rule since there was no communication about the subject of the representation, and Ms. Rostami did not know the identity of the caller when the communication was initiated by the caller.**

The applicable Rule of Professional Conduct in this case is NYS Rule of Professional Conduct 4.2 which states:

RULE 4.2:

Communication With Person Represented By Counsel

(a) In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

---

[2] The Declaration of Brian Graifman attaches only exhibits, as obviously Mr. Graifman has no personal knowledge regarding the facts at issue.  It is noteworthy, however, that no declaration of Mr. Sakagami is provided.

>   (b) Notwithstanding the prohibitions of paragraph (a), and unless otherwise prohibited by law, a lawyer may cause a client to communicate with a represented person unless the represented person is not legally competent, and may counsel the client with respect to those communications, provided the lawyer gives reasonable advance notice to the represented person's counsel that such communications will be taking place.

Firstly, nowhere in the moving papers is there any description of any communication *about the subject of the representation*. As set forth in the attached Declarations of Florence Rostami, Esq., and Reiko Sakuramoto, the communication was initiated by the then-unknown caller[3], was of unknown and uncertain purpose, and appeared to Mrs. Sakuramoto and Ms. Rostami to be in the nature of a threat or harassment to Mrs. Sakuramoto, who was instrumental in bringing victims forward to seek representation.

The content of the call is undisputed. As is related in the Declarations of Rieko Sakuramoto and Florence Rostami, Esq., the call was in the nature of a late-night harassing call to Ms. Sakuramoto apparently intended to dissuade her from interfering with the defendants' continuing scams, and to persuade her from contacting other potential plaintiffs. Mr. Sakagami has not disputed any of these facts with his own declaration. In particular, he does not claim that he revealed anything related to this litigation in his phone call to Mrs. Sakuramoto.

Moving parties try to make much of the fact that Ms. Rostami listened in on a telephone conference without making her presence known. This would only have possible significance, however, <u>if Mr. Sakagami had ever identified himself during the brief exchange.</u> Since there is no evidence that Mr. Sakagami ever indicated during the conversation who he was, there was no reason whatsoever why Ms. Rostami should have refrained from listening to the conversation. The professional rule applies when the party to the communication is one that the attorney *knows* to be represented by another lawyer. When the phone call came in, to Mrs. Sakuramoto's cell

---

[3] See, Declaration of Florence Rostami, ¶12, Rieko Sakuramoto, ¶15

phone in her living room at 10:10 pm, neither Mrs. Sakuramoto nor Ms. Rostami knew who was calling. The attorney and her client may have had suspicions regarding who might have been calling Mrs. Sakuramoto's cell phone late at night, or who was behind the call, but in no sense did Ms. Rostami <u>know</u> who was calling. Furthermore, she was privileged to overhear the call in the course of investigating the late night harassment of her client.[4]

> **2. Unlike the attorneys in the cases relied on by moving parties, Ms. Rostami did not engineer an unethical contact, nor did she use another to do what she could not do.**

It is noteworthy that moving parties nowhere discuss the facts of any of the cited cases in their papers. Review of the facts in each show how different the situations are and how poor these authorities are for the propositions which the moving parties would draw.

In this regard, this case is completely unlike *Papanicolaou v. Chase Manhattan Bank N.A.* 720 F. Supp. 1080 (S.D.N.Y. 1989). There, the plaintiff arrived at the defense attorney's offices to attend a deposition, which had ended earlier that day. The plaintiff encountered the responsible partner in the firm's reception area. They exchanged pleasantries and the plaintiff asked the partner how the case was going. The conversation immediately became sensitive, and the plaintiff suggested the two go to a conference room. The partner agreed. The **resulting meeting, which was joined about twenty minutes later by one of the defendant's employees, lasted an hour-and-a-half**. Furthermore, as the case discusses, the unrepresented plaintiff asserted that the attorney goaded him on and threatened him with negative press coverage at trial-and revenge later-if he continued to pursue the suit.

---

[4] New York law specifically allows a phone conversation to be overheard with the consent of one party to the conversation. "Mechanical overhearing of a conversation" means the intentional overhearing or recording of a conversation or discussion, **without the consent of at least one party thereto**, by a person not present threat, by means of any instrument, device or equipment." Ch. 40 NY Penal Law, §250.00 sub. (2) [emphasis added]. *See, People v. Powers* (3 Dept. 2007) 42 A.D.3d 816, 839 N.Y.S.2d 865, leave to appeal denied, [Recorded conversation was not eavesdropping where obtained with consent of either the caller or receiver of the communication.]

Here, we have a passing telephone call, in the nature of harassment, initiated by the defendant.[5] This is nothing like the factual situation in *Papanicolaou*.

This case is also completely unlike the case in *Meachum v. Outdoor World Corporation* 171 Misc.2d 354, 654 N.Y.S.2d 240, a 1997 Queens County trial court slip opinion. There, the attorneys in question ***specifically engineered*** a scheme whereby their clients, plaintiffs in a case against the corporation, contacted agents of the defendant corporation, with tape recording equipment arranged to be available by the attorneys, for the very purpose of eliciting damaging admissions from the corporation's agents. The court had no trouble under the facts of that case finding that the attorney had "caused" a communication with a represented party, and also that the tape recording of the conversations, while not illegal under New York law, was "unethical and highly improper".[6] Further, that case involved a class action, and the question was whether the attorneys should remain as putative class counsel, a position which involved ethical responsibilities to a class as a whole, not just the attorney's own clients.

In *Matter of Howes* 123 N.M. 311, 940 P.2d 159 (1997), the subject attorney, a deputy district attorney, repeatedly spoke with a murder defendant regarding the case even though the attorney knew the defendant was in custody on the very charges the attorney was discussing, and knew the defendant was represented. There was no excuse for the repeated communications that occurred between the attorney and the represented party in that case. That case also differs from this and the other cases cited in that the contact with the defendant also implicated the

---

[5] Indeed, given the timing, nature and undisputed content of the call, it is somewhat surprising that Defendant Sakagami is willing to vouch for the fact that it was in fact he who made the call.

[6] "Plaintiffs contend that, under New York law, the tape recording of a conversation is legal if consented to by one of the parties to the conversation. This however, is not dispositive. While the tape recording may not have been illegal, nevertheless, the conduct by counsel was unethical and highly improper. Had Montanez thought of the idea on his own and merely sought Kutil's advice as to its legality, the contention might have some relevance. An attorney "need not discourage or deter such activity, but he also may not assist, direct or otherwise participate in it so that, in effect, he is using the client as a vehicle to do what he cannot do." *Meachum*, supra, 654 N.Y.S. 2d at 249.

defendant's Sixth Amendment right to counsel. The direct contact between the prosecuting attorney and the defendant obviously impaired that right.

The law of the Second Circuit is that "[t]he business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it." *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir.1976); *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979); *Armstrong v. McAlpin*, 625 F.2d 433, 445-46 (2d Cir.1980). An attorney's ethical violation by itself does not warrant disqualification under this approach. Rather, disqualification is proper only in cases where a court also finds that the unethical conduct threatens to taint the trial. This more limited test largely rests on a belief that disqualification motions are often made for tactical reasons such as delay or harassment. While the "taint" standard "fails to correct all possible ethical conflicts," *Armstrong*, 625 F.2d at 445, this limited disqualification rule serves to deter many meritless, tactical motions that would otherwise be filed. The Second Circuit has most often found grounds for disqualification where the attorney is at least potentially in a position to use privileged information concerning the other side <u>through prior representation</u>, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage, see, e. g., *Fund of Funds, Ltd. v. Arthur Andersen & Co*. 567 F.2d 225 (2d Cir. 1977) The cases note Chief Judge Kaufman's oft-quoted admonition that,

> "When dealing with ethical principles, . . . we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent." *Fund of Funds, Ltd.*, supra, 567

F.2d at 227, quoting *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955).

But in other kinds of cases, the Second Circuit has shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct. See, e. g., *W. T. Grant Co. v. Haines*, 531 F.2d 671 (2d Cir. 1976); *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268 (2d Cir. 1975). This reluctance derives from the fact that disqualification has an immediate adverse effect on the client by separating her from counsel of her choice, and that disqualification motions are often interposed for tactical reasons. See *Allegaert v. Perot*, 565 F.2d 246, 251 (2d Cir. 1977); *J. P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J., concurring). The instant case is just such a motion, interposed for tactical reasons and for delay.

The moving parties have ignored all this Second Circuit law, and have instead focused on a few quotations from less persuasive authority.

### B. EVEN IF A TECHNICAL ETHICAL VIOLATION WERE TO HAVE OCCURRED, DISQUALIFICATION IS NOT CALLED FOR IN THIS CASE BASED ON A 30-SECOND PHONE CALL INITIATED BY THE ADVERSE PARTY.

Courts, of course, exist to resolve disputes, and not to discipline lawyers who come before them. See *Lefrak v. Arabian Am. Oil Co.*, 527 F.2d 1136, 1141 (2d Cir.1975) ("To conduct the broad investigation sought here, aside from its irrelevancy to the remedy of disqualification, in effect transforms the trial judge into the Grievance Committee of the bar association which is certainly not his function."); *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir.1976); *United States Football League v. National Football League*, 605 F.Supp. 1448, 1463 n. 31 (S.D.N.Y.1985). Courts should pause before depriving a party of the counsel of its choice, but disqualification could be appropriate when a lawyer's conduct <u>might taint the case</u>.

That is not the situation here.

In *MMR/Wallace Power* 764 F. Supp. 712 (D. Conn 1991), another case cited by moving parties without discussion of the facts, the district court found that the attorney had contact with the adversary's former employee, ***a member of the party's litigation team, who held confidential or privileged information, and disclosed such information to the attorney***. The court held that these facts required disqualification and attorney's continued representation of contractor threatened to "taint" further proceedings in case. Again, this is completely unlike the situation here. There was absolutely no exchange of confidential information in the late night call to Mrs. Sakuramoto's house.

A violation of professional ethics rules does not alone trigger disqualification, *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 ( 2d Cir.1976) [Counsel for corporate plaintiff interrogated corporate employee in depth while knowing that corporate employee had been named in lawsuit filed that day; disqualification not required]; *Meat Price Investigators Ass'n v. Spencer Foods, Inc.*, 572 F.2d 163, 165 (8th Cir.1978); rather, a trial judge should primarily assess the possibility of prejudice at trial that might result from the attorney's unethical act.

As discussed in *Meat Price Investigators Ass'n*, supra, the role of the Federal trial court in a motion of this type, in determining whether the attorney should be disqualified from participating in the lawsuit because of alleged improper contact with a represented party, the court should balance the client's interest in being represented by counsel of her choice, the opposing party's interest in a trial free from prejudice due to disclosure of confidential information, and public's interest in scrupulous administration of justice. In the *Meat Price Investigator's Ass'n* case, the trial court was held justified in refusing to disqualify plaintiff's counsel where the plaintiff's lawyers extensively questioned defendant's officers at a meeting

without the corporate counsel being present. The court held that there was an insufficient showing of prejudice to warrant the denial to plaintiff of the counsel of its choosing.[7]

Here, unlike the meeting at which the meat company executives were grilled by opposing counsel in *Meat Price Investigators*, or the hour-and-a-half meeting with plaintiff in *Papanicolaou*, there was a brief, unidentified call at 10:15 pm to counsel's client. There was absolutely no confidential information exchange.

In the present case, there is absolutely no chance of prejudice, and, indeed, moving parties claim none. In *Papanicolaou,* supra, defense counsel had an hour-and-a-half discussion with the plaintiff regarding his litigation strategy. Here, there was a passing call initiated by the defendant.

All the moving parties have to say about this is, "Even if the initiation of the call had some relevance, Mr. Sakagami was not made aware that the plaintiffs' attorney was listening in, and so it cannot be said that he assumed the risk." If Mr. Sakagami were so concerned about who might be listening in when he told Mrs. Sakuramoto, at 10:15 pm to put her hand on her heart, he could have at least <u>identified himself</u> in the call. What he did was shameful, and now he wants to use his own bad acts to disqualify plaintiffs from their counsel of choice.

///

---

[7] There is a throw-away argument at the end of the brief referring to a investigation by the Disciplinary Committee of the NY State Supreme Court. This is in response to a complaint about Ms. Rostami by Mr. Saito, Mr. Sakagami's partner. The Committee has taken no action, and the proceedings are confidential at this time. In fact, <u>counsel has violated New York Judiciary Law by revealing the contents of that investigation</u>:

"Any statute or rule to the contrary notwithstanding, all papers, records and documents upon the application or examination of any person for admission as an attorney and counsellor at law and upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, ***shall be sealed and be deemed private and confidential***." New York Judiciary Law, §90 (10).

Further, the letter in question there was also proper, but a discussion of same is outside the relevance of this Motion.

## C.     CONCLUSION

Moving party has the burden to show that the balance tips strongly toward taking away plaintiff's choice of counsel based on all the applicable factors. This can only be justified based on an actual ethical violation and in order to avoid taint which would prevent defendants from getting a fair trial. Given the unsolicited, unjustified, late-night nature of the call in this case, and the total lack of any confidential information exchanged, this is an easy decision in this case.

For the foregoing reasons, the Motion should be DENIED.

FLORENCE ROSTAMI LAW, LLC


By: ___s/ Garth Goldberg, Esq.___
  Florence Rostami
  Garth Goldberg
  708 Third Avenue, 5th Floor
  New York, New York 10017
  (212) 209-3962
  ggoldberg@rostamilaw.com

*Attorney for Plaintiffs*

Z:\My Documents\Atlantic Bank\Pleadings\Motion to Disqualify Counsel\plaintiffs memorandum of law.docx