UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AYAKO HOYAMA et al., | Case No. 1:10-civ-06465 BSG-GWG |
| Plaintiffs, | **DECLARATION OF RIEKO SAKURAMOTO IN OPPOSITION TO MOTION TO DISQUALIFY COUNSEL** |
| v. | |
| MAMORU SAITO, TAKAHITO SAKAGAMI, TETSUYA HASHIKURA, HIROMI HASHIKURA, RUMIKO TERMYNA, AMIWORLD, INC, et al., | |
| Defendants. | |

I, Rieko Sakuramoto, hereby declare under Penalty of Perjury:

1. I am a resident of Leonia, New Jersey. I have personal knowledge of the following facts and submit this Declaration in Opposition to the Motion of Defendants Takahito Sakagami, Amiworld, Inc., EBOA, Ltd., JASB of New York Corporation., ODIN Energy NY Corp., and ODIN Petroleum Corp. to disqualify the firm of Rostami Law LLC as counsel for the plaintiffs in this case.

2. I am the mother of two children, and am employed as a housewife and homemaker. My mother, Yoko Ogura, and sister, Kayoko Orita invested approximately $240,000 in various ventures promoted by defendants Mamoru Saito, Takahito Sakagami, and Tetsuya and Hiromi Hashikura. I also invested a small amount of money, but am not seeking recovery in this case. My mother is an elderly lady, and both she and my sister, Ms. Orita, a housewife, are residents of Japan, and speak only Japanese.

3. I am a native Japanese speaker, but am also relatively fluent in English.

4. At about 3 p.m. on the afternoon of December 17, 2010, I called Florence Rostami regarding a disturbing phone call I had received on my home phone. I was frightened

and upset.    The person spoke Japanese.

5.      The caller stated that he was representing the Bank of the Atlantic, Ltd. ("BOA") who holds me responsible for the damages their business was suffering as the result of my actions. The caller told me that BOA holds me responsible for damages to their business caused by my actions.  The statement upset me.

6.      I did not recognize the caller.  Because the voice was very clear on the line, I believed the caller might be in the vicinity – I believed the caller was in New Jersey or in New York. The caller spoke in a flat, monotone voice, in a manner which I found to be menacing.

7.      At the time, I was at home with one of my two small children.  I told the caller that I could not speak to him, and that I had to go pick up my other child at school.  I politely hung up on the caller.

8.      I told Ms. Rostami that I had told the caller that I did not want to be contacted and that I had to pick up my child from school, and terminated the call.  However, caller had made repeated calls thereafter to my land line at home. The Caller ID in each instance showed the same number as the origin of the first call. I disconnected the land line telephone. I did not know the caller, and did not know how the person obtained my home phone number, which I do not give out freely.

9.      The callers' statement, his threatening tone of voice, the fact that he knew my home telephone number had frightened me. At that time, I did not know the identity of this caller.  I could not answer my cell phone, though the caller had called my cell phone just before he called my home phone around 3 o'clock.  So this means he knew my both numbers.

10.     Because of the information we had discovered about the defendants Saito and Sakagami, I also became very concerned about my safety and that of my children. I heard that

Declaration of
Rieko Sakuramoto                                                  2

Saito and Sakagami had a history of fraudulent schemes in Japan, and that banks licensed by the Republic of Anjouan (such as BOA) were, according to the U.S. Department of State, "likely to be involved with drug trafficking, money laundering" and other crimes.

11. Later that evening, at about 10:10 pm, I again received another call on my cell phone. My husband, a computer systems engineer, was not at home. I did not answer the call.

12. I called Ms. Rostami. I was frightened and my voice was shaking. I told Ms. Rostami I was home alone with my children. I told her that I had received calls on my cell phone from the same number as earlier in the day. I did not answer the calls.

13. I was on the phone with Attorney Rostami, speaking on my cell phone, when the landline at my house began to ring. The Caller ID indicated it was from the same phone number as earlier that day.

14. I answered the call, and placed the call on a speakerphone so that we both could hear the call.

15. Without identifying himself, in a flat monotonous voice, a man told me something to the effect that: "They told me I interrupted you this afternoon. I'm sorry". But, the caller did not sound apologetic at all. I did not recognize the caller.

16. Then the caller told me that you are doing is harming BOA's business. Then I asked him what he meant by business harm.

17. He then continued to say something to the effect of, "Put your hand on your heart, and feel the consequences of your action."

18. I then said, in a somewhat startled tone, "Are you threatening me?"

19. I then heard the caller say, "I'm not. . . I am going to call you again." At that point, the caller's tone changed, to more of an angry tone. At that time, I also heard "Kansai-

Ben", or Osaka accent.

20. Abruptly, the caller ended the call. The call was very short – probably 30 seconds or so.

Date:   April _13_, 2011
        New York, NY

*Rieko Sakuramoto* (signature)
Rieko Sakuramoto

Declaration of
Rieko Sakuramoto 4