UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                           **ECF CASE**
---------------------------------------------------------------x
ATSUSHI MORI, et al.,

                    Plaintiffs,

                                          10-cv-6465-BSJ-GWG

           -against-

MAMORU SAITO, et al.,

                    Defendants.
---------------------------------------------------------------x


**REPLY BRIEF IN SUPPORT OF
SAKAGAMI DEFENDANTS' MOTION
TO DISQUALIFY PLAINTIFFS' COUNSEL**


Dated: April 25, 2011


**GUSRAE, KAPLAN, BRUNO & NUSBAUM PLLC**
*Attorneys for Certain (Sakagami) Defendants*
120 Wall Street
New York, New York  10005
(212) 269-1400

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES .................................................................................. .... ii

Statement in Reply.......................................................................................... .... 1

    A.    Rostami Had Ample Indication That She Should Have
        Identified Herself, And Ample Time To Do So, So That
        Listening In Without Identifying Herself Was An Ethical Violation ............... .... 2

    B.    Considering Rostami's Stealh and Chicancery,
        Disqualification Is Appropriate........................................................ .... 4

    C.    If Factual Determinations Are Necessary, Testimony
        Should Be Elicited From Ms. Rostami and/or Mrs. Sakuramoto ..................... .... 5

CONCLUSION.................................................................................................. .... 6

# TABLE OF AUTHORITIES

**CASES**                                                          Page **No.**

MMR/Wallace Power & Indus., Inc. v. Thames Assocs.,
764 F. Supp. 712 (D. Conn. 1991).................................................................4-5

Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080 (S.D.N.Y. 1989)...........4

Defendants Takahito Sakagami ("Sakagami"), Amiworld, Inc., EBOA, Ltd., JASB of New York Corp., ODIN Energy NY Corp., and ODIN Petroleum Corp. (collectively, the "Sakagami Defendants") submit this reply in further support of their motion to disqualify Ms. Rostami and her firm from representing parties in this action.

## Statement in Reply

In her various submissions, Ms. Rostami cannot keep straight her version of what actually occurred when she purposely and secretly listened in on a telephone conversation with defendant Sakagami on December 17, 2010.  While she now conveniently suggests that she only realized who Mr. Sakagami might be as he hung up, that is not the version she told in her earlier December 22, 2010 letter-motion to the Court (exhibit A to the Graifman moving declaration).  In that letter, she stated that Mr. Sakagami's calls started "[i]n August of 2010, soon after the filing of the Complaint," when "Sakagami commenced a campaign of intimidation by telephoning Ms. Ogura . . . and Mr. Mori, the other named plaintiff, several times . . . . Sakagami continued calling them even after he had been asked by counsel not to contact any plaintiff or members of their family" (Rostami Dec. 22, 2010 letter at 1 (emphasis added)).

Ms. Rostami admits that prior to the December 17 call, she had spoken with Mr. Sakagami on at least three occasions early in her investigation (before he had counsel) (Rostami Decl. ¶ 20).  Ms. Rostami rests her position on this too-clever proposition stated in her memorandum of law (with emphasis from the original):  "**The attorney and her client may have had suspicions regarding who might have been calling Mrs. Sakuramoto's cell phone late at night, or who was behind the call, but in no sense did Ms. Rostami <u>know</u> who was calling**" (Opposition Memo of Law at 6).

1

Even though Ms. Rostami obviously suspected that it was Mr. Sakagami calling, she nevertheless stayed on the line listening without identifying herself.  Even if she was not sure that it was Mr. Sakagami – which is highly unlikely, especially when she initially heard his voice – she knew it was a person affiliated with the defendants, and she knew that various such persons were represented by counsel.

Ms. Rostami's opposition declaration raises more questions than it answers.  There she sets forth a truncated version of Mr. Sakagami's conversation – shorter even than the account of her client, Mrs. Sakuramoto.  Dissecting those versions shows that Ms. Rostami's laying in wait and purposely eavesdropping without making her presence known was unethical.  At the least, sufficient questions are raised that Ms. Rostami (and perhaps Mrs. Sakuramoto) should be questioned under oath concerning conversations with Mr. Sakagami.

Especially in view of the stealth involved in Ms. Rostami's actions, and the failure of the opposition to raise any argument of possible prejudice that might flow from disqualification at this early stage of the litigation, disqualification would be proper.

**A.**     **Rostami Had Ample Indication That She Should Have Identified Herself, And Ample Time To Do So, So That <u>Listening In Without Identifying Herself Was An Ethical Violation</u>**

As noted above, Ms. Rostami knew Mr. Sakagami's voice from having spoken with him various times before he was represented (Rostami Decl. ¶ 20).  Ms. Rostami also knew that Mr. Sakagami had been calling investors who Ms. Rostami had been contacting, his having supposedly "commenced a campaign" of telephone calls in August 2010 (Rostami Dec. 22, 2010 letter at 1).

Synthesizing the versions of events on the day in question shows that Mr. Sakagami spoke with Mrs. Sakuramoto, an investor (Sakuramoto Decl. ¶ 2), during the day (*id.* ¶ 4), but

that Mrs. Sakuramoto responded that she could not speak to him because she had to pick up her other child, and then she politely hung up (*id.* ¶ 7).  Mr. Sakagami made further calls to her that day, but Mrs. Sakuramoto did not pick up the phone to continue the conversation (*id.* ¶¶ 8-9, 11) – that is, until Ms. Rostami listened in on the other line.  It was only the second conversation with Mr. Sakagami that day.

For that call, Mrs. Sakuramoto answered the phone, and placed the call on speakerphone so that both she and Ms. Rostami could listen in (*id.* ¶ 14).  While both Mrs. Sakuramoto and Ms. Rostami suggest that Mr. Sakagami did not identify himself (*id.* ¶ 15, Rostami Decl. ¶ 17), it appears that Ms. Rostami likely did not hear call's inception, because Mrs. Sakuramoto answered the phone and apparently only then placed the call on speakerphone (Sakuramoto Decl. ¶ 14), and Mrs. Sakuramoto may have missed the details of the call's inception while she placed the call on speakerphone.[1]

According to the opposition, the following exchange then took place:

- Mr. Sakagami said something like "They told me I interrupted you this afternoon. I'm sorry." (Sakuramoto Decl. ¶ 15; Rostami Decl. ¶ 17).

- Mr. Sakagami then continued, saying to Mrs. Sakuramoto that she was harming the bank's business (Sakuramoto Decl. ¶ 16).[2]

- Mrs. Sakuramoto then asked him what he meant by business harm (*id.*).

- Mr. Sakagami then said something like "Put your hand on your heart, and feel the consequences of your action" (Sakuramoto Decl. ¶ 17; Rostami Decl. ¶ 18).

- Mrs. Sakuramoto then asked Mr. Sakagami if he was threatening her (Sakuramoto Decl. ¶ 18; Rostami Decl. ¶ 19).

---

[1]    Their suggestion that in this call – unlike the calls back in August 2010 – Mr. Sakagami did not identify himself, in the context of the call makes little sense.

[2]    Ms. Rostami, in her declaration, fails to mention this and the next segment of the overheard conversation.

- Mr. Sakagami then said "I'm not . . ." (Rostami Decl. ¶ 20).[3]

- According to both Ms. Rostami and Mrs. Sakuramoto, "[a]t that point, the caller's tone changed, to more of an angry tone" (Sakuramoto Decl. ¶ 19; Rostami Decl. ¶ 20). Neither declarant states what further statement of Mr. Sakuramoto was said in the changed tone.[4]

The call then ended (Sakuramoto Decl. ¶ 20; Rostami Decl. ¶ 21). At no time during this quite extensive exchange – before, during or after each bullet point above – did Ms. Rostami identify her presence on the call, or warn the caller that an adversary counsel was on the line. Ms. Rostami does not deny that her listening in on the call was on purpose, and not inadvertent (as noted in the moving brief Preliminary Statement).

This constitutes an ethical violation. At the very least, it creates a presumption of an ethical violation that shifts the burden to Ms. Rostami to rebut. To the extent this constitutes a question of fact, Ms. Rostami's testimony ought to be elicited, and perhaps the testimony of Mrs. Sakuramoto.[5]

## B.    Considering Rostami's Stealth and Chicanery, Disqualification Is Appropriate

The opposition fails to take into account Ms. Rostami's stealth and chicanery, which should create a presumption of disqualification. *See* Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080, 1083 (S.D.N.Y. 1989) ("any doubt is to be resolved in favor of disqualification"); MMR/Wallace Power & Indus., Inc. v. Thames Assocs., 764 F. Supp. 712,

---

[3]    Mrs. Sakuramoto's version varies here, and is longer, with Mr. Sakagami saying "I'm not. . . I am going to call you again" (Sakuramoto Decl. ¶ 19).
[4]    Actually, a change of tone would be no surprise, considering Mrs. Sakuramoto's sudden accusatory questioning him about threatening her.
[5]    Any testimony by Mr. Sakagami about the details of his conversation would only exacerbate the violation. In any event, he resides in the Republic of Columbia, has not answered yet, and reserves the right to contest jurisdiction (as well as to assert any constitutional privileges against testifying). In such circumstance, the issue of Ms. Rostami's disqualification would remain relevant, because she and her firm would be the counsel adverse to any jurisdictional motion by Mr. Sakagami.

727-28 (D. Conn. 1991) (even where "no confidential information was actually disclosed," an "appearance of impropriety" is sufficient to warrant disqualification).

Ms. Rostami admits to having overheard Mr. Sakagami's conversation with another investor, and monitored not only the words stated, but his tone and demeanor (*e.g.*, Rostami Decl. ¶ 20). This presumably gives Ms. Rostami unfair insight and psychological advantage that she otherwise would not have gained, had she obeyed the guiding ethical proscriptions. Ms. Rostami is also discredited by her omitting material facts in her declaration, failing to include portions of the overheard conversation as related by Mrs. Sakuramoto (*see* Sakuramoto Decl. ¶ 16), and avoiding any reference to the earlier campaign of calls purportedly by Mr. Sakagami that she complained about in her December 22 letter to the Court.

Further, nowhere in the opposition papers do plaintiffs even attempt to rebut the position that because this is the inception of the case, that the plaintiffs will suffer no prejudice by a disqualification (*see* moving brief at 5). Under such circumstances, disqualification is proper.[6]

## C.   If Factual Determinations Are Necessary, Testimony Should Be Elicited From Ms. Rostami and/or Mrs. Sakuramoto

As noted above, if necessary for a factual determination, testimony should be elicited from Ms. Rostami and/or Mrs. Sakuramoto. For efficiency, and to conserve judicial resources, this ought first take place by limited scope deposition testimony.

---

[6]    This Court should ignore the opposition suggestion that "banks licensed by the Republic of Anjouan (such as BOA) were, according to the U.S. Department of State, 'likely to be involved with drug trafficking, money laundering' and other crimes" (Rostami Decl. ¶ 12; Sakuramoto Decl. ¶ 10). As we noted in our December 23, 2010 letter to Judge Barbara S. Jones, that same report warns that "France remains an attractive venue for money laundering," that "Germany continues to be a consumer and a major hub for narcotics" and that "[o]rganized criminal groups involved in drug-trafficking and other illegal activities are an additional source of money laundering in Germany."

## CONCLUSION

For the foregoing reasons, and those stated in the moving papers, Ms. Rostami and her law firm should be disqualified from representing plaintiffs, for her secretly listening in on the telephone conversation of one of the defendants while he discussed the underlying dispute after he was represented by counsel in this action, or at the very least there should be limited deposition discovery of her and Mrs. Sakuramoto on the subject.

Dated: New York, New York
       April 25, 2011

                              **GUSRAE, KAPLAN, BRUNO &
                              NUSBAUM PLLC**


                              By: _____/s/_____
                                     Brian D. Graifman (BG5636)
                                     *Attorneys for Certain Defendants*
                                     120 Wall Street
                                     New York, NY 10005
                                     212-269-1400


Amiworld/00009198

6