UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ATSUSHI MORI, et al.,                          :

        Plaintiffs,                          :         10 Civ. 6465 (BSJ) (GWG)

  -against-                                             :         OPINION AND ORDER

MAMORU SAITO, et al.,                          :

        Defendants.                         :
-----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Appearances of counsel

Attorney for Plaintiff:
Garth Goldberg
Florence Rostami Law, LLC
708 Third Avenue, 5th Floor
New York, NY 10017

Attorney for Defendants:
Brian D. Graifman
Gusrae, Kaplan, Bruno & Nusbaum PLLC
120 Wall Street
New York, NY 10005

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ATSUSHI MORI, et al.,                           :

                Plaintiffs,                     :    10 Civ. 6465 (BSJ) (GWG)

        -against-                               :    OPINION AND ORDER

MAMORU SAITO, et al.,                           :

                Defendants.                     :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

A number of plaintiffs have brought this action seeking damages relating to the loss of approximately $11.4 million in an alleged Ponzi scheme. Plaintiffs are represented by Florence Rostami of Florence Rostami Law, LLC, New York, New York. Certain defendants – Takahito Sakagami; Amiworld, Inc.; EBOA, Ltd.; JASB of New York Corp.; ODIN Energy NY Corp.; and ODIN Petroleum Corp. (collectively, the "defendants") – now move for disqualification of Rostami and her firm on the ground that Rostami violated New York's Rules of Professional Conduct when she listened in on a late-night telephone conversation between Rieko Sakuramoto – a non-party who is related to two of the plaintiffs – and an individual whom all parties now agree was defendant Takahito Sakagami.[1] For the reasons stated below, the motion to disqualify is denied.

---

[1] See Notice of Motion to Disqualify Plaintiffs' Counsel, filed Apr. 4, 2011 (Docket # 32); Declaration of Brian D. Graifman, filed Apr. 4, 2011 (Docket # 33) ("Graifman Decl."); Brief in Support of Sakagami Defendants' Motion to Disqualify Plaintiffs' Counsel, filed Apr. 4, 2011 (Docket # 34) ("Def. Mem."); Memorandum of Law in Opposition to Motion of Sakagami Defendants to Disqualify Plaintiff's Counsel, filed Apr. 16, 2011 (Docket # 37); Declaration of Florence Rostami in Opposition to Motion to Disqualify Counsel, filed Apr. 16, 2011 (Docket # 38) ("Rostami Decl."); Declaration of Rieko Sakuramoto in Opposition to Motion to Disqualify Counsel, filed Apr. 16, 2011 (Docket # 39) ("Sakuramoto Decl."); Reply Brief in Support of Sakagami Defendants' Motion to Disqualify Plaintiffs' Counsel, filed Apr. 25, 2011 (Docket # 40) ("Def. Reply").

I.   FACTS

    A.   The Nature of the Underlying Action

We recount the allegations of the complaint for the purpose of identifying the subject of Sakagami's representation by his counsel. We cite to the original complaint, and not to the amended complaint, because it was the governing pleading at the time of the incident.

The complaint was filed on August 30, 2010, on behalf of a number of plaintiffs alleging that defendants Takahito Sakagami, Mamoru Saito, and Tetsuya Hashikura, "created and maintained a Ponzi scheme, preying upon mostly Japanese residents of the U.S. with minimal investment experience to invest in a purported crude oil trading and refinery operation." Complaint, filed Aug. 30, 2010 (Docket # 1) ("Compl.") at 1 ¶ 1; accord id. at 7 ¶ 20. The defendants offered investors, including plaintiffs, a "return of 35% to 50% on one year term investments with a guaranteed principal." Id. at 1-2 ¶ 1.

In order to carry out this scheme, Sakagami and Saito organized numerous companies, offshore banks, and other financial institutions, which were wholly owned by them or other defendants. Id. at 2 ¶ 2. Plaintiffs were solicited to invest in or purchase shares of these entities. Id. Pursuant to an investment agreement with defendants, plaintiffs were required to open an account with Bank of the Atlantic, Ltd. ("BOA"). Id. Plaintiffs were informed that the returns on their investments would be deposited into their BOA account. Id.

At first, investors were able to transfer money from their BOA accounts into their personal bank accounts. Id. at 2-3 ¶ 4. But defendants eventually stopped paying plaintiffs any returns on their investments. Id. at 3 ¶ 5. "Although their bank accounts at BOA showed monthly deposits of purported returns, after a few months the investors could not withdraw any of the funds." Id. Defendants have refused to return plaintiffs' invested funds. Id. at 3 ¶ 8;

accord id. at 11 ¶ 37.

### B. Facts Relating to the Disqualification Motion

The facts relating to the disqualification motion are undisputed inasmuch as the defendants have submitted no evidence to support their motion other letters from Rostami herself. The plaintiffs have submitted affidavits from Rostami and Sakuramoto.

Two of the plaintiffs in this action are Kayoko Orita and her mother, Yoko Ogura, both of whom live in Japan. See Compl. at 1; id. at 4 ¶¶ 2-3; id. at 9 ¶ 25; Sakuramoto Decl. ¶ 2. Sakuramoto, who is not herself a plaintiff, is the daughter of Ogura and the sister of Orita. Sakuramoto Decl. ¶ 2. Sakuramoto lives in New Jersey. Id. ¶ 1.

On the afternoon of December 17, 2010, Sakuramoto received a call on her home land line from a man speaking in Japanese and using a tone of voice that Sakuramoto found to be "menacing." Id. ¶¶ 4, 6; see Rostami Decl. ¶ 7. The man stated that he was representing BOA and that BOA held Sakuramoto responsible for the damages it was suffering as a result of Sakuramoto's unspecified "actions." Sakuramoto Decl. ¶ 5; see Rostami Decl. ¶ 8. Because the voice was very clear on the line, Sakuramoto believed the caller might be near her home. Sakuramoto Decl. ¶ 6; see Rostami Decl. ¶ 8. Sakuramoto told the caller that she could not speak to him, and that she had to go pick up her child at school. Sakuramoto Decl. ¶ 7; see Rostami Decl. ¶ 9.

The caller then made repeated calls to Sakuramoto's land line. Sakuramoto Decl. ¶ 8; see Rostami Decl. ¶ 9. Sakuramoto knew it was the same caller because her Caller ID showed the same number as the first call. Sakuramoto Decl. ¶ 8; see Rostami Decl. ¶ 9. Sakuramoto disconnected the land line because she did not know the caller and did not know how he had obtained her home phone number, which she does not give out freely. Sakuramoto Decl. ¶ 8; see

Rostami Decl. ¶ 9.  Sakuramoto felt frightened by the caller's statements, his "threatening tone of voice," and the fact that he knew her home telephone number.  Sakuramoto Decl. ¶ 9; see Rostami Decl. ¶ 10.  Sakuramoto was further concerned about her family's safety because she had information that Sakagami and Saito had a history of fraudulent schemes in Japan, and because she believed that banks licensed by the Republic of Anjouan, where BOA is licensed, are "according to the U.S. Department of State, 'likely to be involved with drug trafficking, money laundering' and other crimes,'" Sakuramoto Decl. ¶ 10; see Rostami Decl. ¶ 12.

      Sakuramoto then called Rostami and recounted the call.  Sakuramoto Decl. ¶ 8; see Rostami Decl. ¶ 7.  Rostami perceived Sakuramoto as being "frightened and upset."  Rostami Decl. ¶ 7.  Rostami called Brian Graifman, counsel for some of the defendants, and told him about the call.  Id. ¶ 13.  Graifman said he did not represent BOA and told Rostami "that there was no rule against a party calling another party."  Id.

      Later that evening, at approximately 10:10 pm, Sakuramoto received a call on her cell phone from the same number that had called her land line earlier in the day.  Sakuramoto Decl. ¶ 11; see Rostami Decl. ¶ 15.  She did not answer the call.  Sakuramoto Decl. ¶ 11; see Rostami Decl. ¶ 15.  She then called Rostami on her cell phone and informed her that she was home alone with her children.  Sakuramoto Decl. ¶ 12; see Rostami Decl. ¶ 15.  Sakuramoto "was frightened and [her] voice was shaking."  Sakuramoto Decl. ¶ 12; see also Rostami Decl. ¶ 15 (Sakuramoto "sounded extremely frightened" and "[h]er voice was shaking").  While she was on the phone with Rostami, Sakuramoto's land line began to ring and the Caller ID indicated the call was from the same phone number as before.  Sakuramoto Decl. ¶ 13; see Rostami Decl. ¶ 15.  Sakuramoto answered the call, which she placed on speaker phone so that Rostami could hear.  Sakuramoto Decl. ¶ 14; see Rostami Decl. ¶ 16.

During the call, the caller said to Sakuramoto, "[t]hey told me I interrupted you this afternoon.  I'm sorry."  Sakuramoto Decl. ¶ 15; see Rostami Decl. ¶ 17.  To Sakuramoto, however, the caller did not sound apologetic.  Sakuramoto Decl. ¶ 15; see Rostami Decl. ¶ 17.  The caller did not identify himself, and spoke in the same tone of voice that Sakuramoto earlier in the day had found menacing.  Sakuramoto Decl. ¶¶ 6, 15; see Rostami Decl. ¶ 17.  The caller then told Sakuramoto that what she was "doing" was "harming BOA's business."  Sakuramoto Decl. ¶ 16.  When Sakuramoto asked him what this meant, he said, "[p]ut your hand on your heart, and feel the consequences of your action."  Id. ¶¶ 16-17; see Rostami Decl. ¶ 18.  Sakuramoto asked him in a startled tone, "[a]re you threatening me?"  Sakuramoto Decl. ¶ 18; see Rostami Decl. ¶ 19.  The caller's response was, "I'm not. . . [.] I am going to call you again."  Sakuramoto Decl. ¶ 19; see Rostami Decl. ¶ 20.  This time his tone changed to "more of an angry tone."  Sakuramoto Decl. ¶ 19; see Rostami Decl. ¶ 20.

Sakuramoto identified the caller's accent as being from Osaka.  Sakuramoto Decl. ¶ 19.  Rostami, who speaks Japanese but not fluently, see Rostami Decl. ¶ 3, also detected an Osaka accent, at which point she "realized that the caller might be Sakagami, who has such an accent," see id. ¶ 20.[2]  At this time, the caller abruptly ended the call.  Sakuramoto Decl. ¶ 20; see Rostami Decl. ¶ 21.  The call lasted for approximately 30 seconds.  Sakuramoto Decl. ¶ 20; Rostami Decl. ¶ 21.  After the call ended, Sakuramoto informed Rostami that this caller was the same person who had phoned her in the afternoon earlier that day.  See Rostami Decl. ¶ 22.  At the time of the December 17 call itself, however, Rostami did not know the identity of the caller.

---

[2] Rostami had additional reason to suspect that the caller might have been Sakagami because she had been informed that some time prior to December 17, 2010, he had called Ogura and another plaintiff, Atsushi Mori, during late hours, trying to dissuade them from seeking legal advice.  See Rostami Decl. ¶ 6.

Id. ¶ 11.

II.     LAW GOVERNING MOTIONS TO DISQUALIFY COUNSEL

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). In exercising this power, courts "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." Hempstead Video, Inc., 409 F.3d at 132 (internal quotation marks and citations omitted).

In considering motions for disqualification, a court utilizes a "restrained approach that focuses primarily on preserving the integrity of the trial process." Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir. 1980), rev'd on other grounds, 449 U.S. 1106 (1981); accord Amusement Indus., Inc. v. Stern, 657 F. Supp. 2d 458, 460 (S.D.N.Y. 2009). Because disqualification motions interfere with a party's right to the counsel of its choice and are often made for tactical reasons, they are viewed with disfavor, A.V. By Versace, Inc. v. Gianni Versace, S.p.A., 160 F. Supp. 2d 657, 662-63 (S.D.N.Y. 2001), and the party seeking disqualification must meet a "heavy burden of proof in order to prevail," Amusement Indus., Inc, 657 F. Supp. 2d at 460 (internal quotation marks and citation omitted). "[D]isqualification is warranted only if an attorney's conduct tends to taint the underlying trial." GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C., 618 F.3d 204, 209 (2d Cir. 2010) (internal quotation marks and citation omitted); accord Nyquist, 590 F.2d at 1246.

Although courts look to state disciplinary rules when considering motions for disqualification, such rules "need not be rigidly applied," Amusement Indus., Inc, 657 F. Supp. 2d at 460 (citation omitted), as they "merely provide general guidance," Hempstead Video, Inc.,

6

409 F.3d at 132 (citation omitted).  Thus, even a violation of disciplinary rules "may not warrant disqualification."  GSI Commerce Solutions, Inc., 618 F.3d at 209 (citation omitted).

New York's Rules of Professional Conduct contain a rule entitled "Communication with person represented by counsel," which provides:

> In representing a client, a lawyer shall not communicate about or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized by law to do so.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 ("Rule 4.2(a)").  Rule 4.2(a), like its predecessor,[3] serves to protect "the integrity of the attorney-client relationship."  Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080, 1084 (S.D.N.Y. 1989).  "It guarantees fairness in the adversarial system," and "prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and laypeople."  Id.; see also Tylena M. v. Heartshare Human Servs., 2004 WL 1252945, at *1 (S.D.N.Y. June 7, 2004) (rule "serves to protect the attorney-client relationship, and to prevent an attorney from taking advantage of a party in the absence of the party's counsel, for instance, by eliciting unwarranted concessions or liability-creating statements or disclosures or protected information, most particularly attorney-client communications") (internal punctuation and citations omitted).

---

[3]  Previously, New York adhered to the New York Code of Professional Responsibility. Disciplinary Rule ("DR") 7-104 of this Code similarly provided:

> During the course of the representation of a client a lawyer shall not . . . [c]ommunicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

DR 7-104(A)(1).

III.     DISCUSSION

The defendants move for disqualification of Rostami and her firm because they assert that Rostami "purposely and secretly listen[ed] in on a telephone conversation with defendant Takahito Sakagami – without making known her presence – while Mr. Sakagami reportedly spoke with a relative of the plaintiffs about the subject matter of this litigation at a time when Ms. Rostami knew that defendant Sakagami was represented by counsel in this case." Def. Mem. at 1.  They note that at no time during the conversation did "Rostami identify her presence on the call, or warn the caller that an adversary counsel was on the line."  Def. Reply at 4.  The defendants contend that Rostami's failure to identify herself during this conversation constitutes a violation of Rule 4.2(a) for which she should be disqualified.  See Def. Mem. at 4-6; Def. Reply at 4-5.

The defendants' motion is denied.  While defendants make various arguments that Rostami must have known at the time of the call that the caller was Sakagami – an assertion that she made in a letter written five days later to the Court, see Letter from Rostami to Judge Jones, dated Dec. 22, 2010 (annexed as Ex. A to Graifman Decl.) at 2 – the defendants have submitted no evidence on this point.  The record reflects that the caller did not identify himself and whatever suspicions Rostami might have harbored as to his identity were not confirmed in the brief period of the phone conversation.  The defendants speculate that Sakagami must have identified himself, see Def. Reply at 2-3, 3 n.1, but there is no affidavit from Sakagami so stating.  Based on the record actually presented to the Court, Rostami did not violate Rule 4.2(a) because the phone call was from an unidentified indiviudal – not someone that she "kn[ew] to be represented by another lawyer in the matter," as required by Rule 4.2(a).

Moreover, given the cryptic and threatening nature of the conversation, which was

8

instituted by Sakagami late at night, the Court cannot conclude that the call constituted a communication on the "subject of the representation." Rule 4.2(a); see also Rostami Decl. ¶ 24 (phone conversation between Sakuramoto and the caller did not involve "any substantive matters regarding the case"). The cases cited by the defendants, Def. Mem. at 3-6, are thus all irrelevant inasmuch as they involved communications with represented parties that discussed the actual subject matters of pending litigation.

Finally, there was nothing about Rostami's conduct that would "tend[] to taint the underlying trial." GSI Commerce Solutions, Inc., 618 F.3d at 209. Rostami learned no privileged information during the call and no admissions were solicited from Sakagami. See generally Nyquist, 590 F.2d at 1246 ("with rare exceptions," disqualification is warranted only where attorney labors under a conflict of interest or where the attorney "is at least potentially in a position to use privileged information concerning the other side through prior representation") (citations omitted).

IV.     CONCLUSION

As should be obvious to a reasonable person, Rostami's decision to listen for a 30-second period to a telephone conversation between a frightened non-party seeking her help late at night and an unidentified stranger who had previously called the non-party's home telephone number multiple times is a decision to be commended, not made the subject of a sanctions motion. The defendants' motion to disqualify plaintiffs' counsel (Docket # 32) is denied.

Dated: May 9, 2011
       New York, New York

                                        _____
                                        GABRIEL W. GORENSTEIN
                                        United States Magistrate Judge

Dated: May 9, 2011
       New York, New York

                                                                                                       _____
                                                                                                       GABRIEL W. GORENSTEIN
                                                                                                        United States Magistrate Judge