```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 0 1 2014

ATSUSHI MORI, et al.,

                        Plaintiffs,

              -v-

MAMORU SAITO, et al.,

                        Defendants.

------------------------------------------------------------------X

10-cv-6465 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

On October 28, 2013, the Court amended default judgments against defendants Amiworld, Inc. and EBOA, Ltd., (see ECF Nos. 231-32), and entered default judgment against defendants Mamoru Saito, Takahito Sakagami, Tetsuya Hashikura, Hiromi Hashikura, EUBK Holdings, Inc., and Tsukuyomi Corporation (collectively "defendants") for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, Section 5 of the Securities Act of 1933 (the "Securities Act"), and common law fraud and civil conspiracy under New York state law. (ECF No. 245.) Although the Court entered default judgment as to liability, it reserved decision on the damages award. (Id. at 8.)

On February 14, 2014, the Court ordered plaintiffs to serve defendants with statements of damages, including calculations for each claim and supporting documentation, by March 12, 2014. (ECF No. 258.) After the Court granted numerous applications by plaintiffs for extensions of time (ECF Nos. 260, 285, 289,

291, 294), on June 20, 2014 plaintiffs finally submitted their calculations and documentation (ECF Nos. 296-98). Pursuant to a subsequent order (ECF No. 299), on June 25, 2014 plaintiffs served defendants with their damages calculations and documentation (ECF No. 300). The Court allowed defendants one final opportunity to contest plaintiffs' claims solely on the issue of whether punitive damages are warranted. (ECF No. 301.) Defendants did not do so.

Plaintiffs move to recover compensatory damages, pre-judgment interest, post-judgment interest, punitive damages, and costs. (Pls.' Mem. of Law in Support of Award of Compensatory Damages, Punitive Damages, Pre-Judgment Interest, Post-Judgment Interest, and Costs ("Pls.' Mem.") 13-14, ECF No. 298.) For the reasons set forth below, plaintiffs' motion is GRANTED in part and DENIED in part.

I.  LEGAL PRINCIPLES

When considering a motion to enter default judgment, the Court must take the well-pleaded factual allegations in the complaint as true when determining the defendant's liability. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). However, the Court does not take the allegations in the complaint as true when determining the amount of damages to award. Credit Lyonnais Sec., Inc. v. Alcantara, 189 F.3d 151, 155 (2d Cir. 1999). Instead, the Court must determine there is a sufficient evidentiary basis for awarding damages. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). For damages that are not easily computable, the Court

must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais, 189 F.3d at 155. While the Court is empowered to conduct an evidentiary hearing to determine the amount of damages, see Fed. R. Civ. P. 55(b)(2), the Court need not do so, and may determine damages by relying on affidavits, other forms of written evidence, or oral presentations, see Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).

## II.  APPLICATION

### a. Compensatory Damages

Compensatory damages are easily computable. In this case, each plaintiff's compensatory damages are equal to their ultimate net investment with defendants. These damages can be proven through affidavits and financial documentation. Accordingly, each plaintiff who submitted an affidavit and supporting financial documentation specifying their ultimate net investment with defendants may be awarded the amount proven by that documentation.

Accordingly, this Court awards plaintiffs $9,534,925.84 in total compensatory damages (which includes both direct and indirect damages), apportioned to each individual plaintiff according to the "Compensatory Damages" column of the table in section III of this Order.

### b. Punitive Damages

Plaintiffs seek punitive damages only for their common law fraud claim.[1] (See Pls.' Mem. 10-13.) The Court may award punitive damages on a common law

---

[1] The Court may not award punitive damages for defendants' violations of various sections of the Exchange Act. See 15 U.S.C. § 78bb(a)(1); Boguslavsky v. Kaplan, 159 F.3d 715, 721 (2d Cir. 1998)

3

fraud claim that is pendent to a Securities Act claim. See Flaks v. Koegel, 504 F.2d 702, 706-07 (2d Cir. 1974). "Under New York law, punitive damages are appropriate in cases involving 'gross, wanton, or willful fraud or other morally culpable conduct.'" Action S.A., 951 F.2d at 509 (quoting Borkowski v. Borkowsi, 355 N.E.2d 287, 287 (1976) (mem.)).

Before awarding punitive damages, the Court must make a finding of "gross, wanton, or willful fraud." In doing so, the Court cannot take as true the well-pleaded facts in the complaint. See Credit Lyonnais Sec., Inc., 189 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). Rather, the Court must base its finding on evidentiary submissions, such as testimony at an evidentiary hearing or detailed affidavits. See Action S.A., 951 F.2d at 509.

Here, plaintiffs submitted sworn declarations that told of a wide-ranging and willful fraud perpetrated by defendants, who targeted unsophisticated investors, often elderly or disabled, and encouraged them to "invest" in what turned out to be sham companies, and then pocketed plaintiffs' "investments," which were often a substantial portion of their life savings. (See Pls.' Mem. ex. 2 ¶¶ 7-8, 20, 29, 31, ex.

---

("[P]unitive damages are unavailable under the [Exchange] Act."). The Court also does not award punitive damages for defendants' violations of the Securities Act. The Second Circuit has noted that punitive damages awards are inconsistent with the legislative intent of the Securities Act and that "to permit punitive damages under the [Securities] Act would create an unfortunate dichotomy between the [Securities] and [Exchange] Acts." Globus v. Law Research Servs., 418 F.2d 1276, 1286 (2d Cir. 1969). But see Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 70-71 (1992) ("The general rule . . . is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.").

3 ¶¶ 3, 8-9, 12, 16-19, ex. 5 ¶¶ 3, 5-8, 14-15, 18, 22, 24, ex. 6 ¶¶ 3, 5, ex. 7 ¶¶ 3, 1-13, 15, 20-21, 24, ex. 9 ¶¶ 2-6, 8, 13, 15, 17, 21, ex. 15 ¶¶ 2, 3, ex. 16 ¶¶ 3-7, 10, 13, ex. 21 ¶¶ 3-6, 16 ex. 24 ¶¶ 2, 4, ex. 25 ¶¶ 3-12, 17-19, ex. 27 ¶¶ 6-12, ex. 28 ¶¶ 2-3, 5-10, 16, 28, ex. 30 ¶¶ 4-11, 13-14, 18-21, ex. 31 ¶¶ 3, 6-8, 13, 15, ex. 32 ¶¶ 2, 5-10, ex. 33 ¶¶ 3-6, 14, ex. 36 at 2-3, ex. 37 ¶¶ 4-12, 17, 23, 32, ex. 44 ¶¶ 2-7, ex. 45 ¶¶ 2-5, 7, 11, 13, 18, ex. 46 ¶¶ 3-7, 15, ex. 47 ¶¶ 4-5, 13, ex. 49 ¶ 2, ex. 50 ¶¶ 4-11, ex. 52 ¶¶ 4-8, ex. 53 ¶¶ 5-9, 13, ex. 54 ¶¶ 4-7, 14, ex. 55 ¶¶ 2-12, 14-15, 21-22, ex. 56 ¶¶ 2, 6-9, 17, ex. 57 ¶¶ 5-13, 22 (collectively "Pls.' Decls.").) Defendants also created fake websites and offering memoranda (id. exs. 58-62, 65-69), told plaintiffs that their investments would be guaranteed by a Swedish bank that in reality was not authorized to offer any financial services (see, e.g., id. ex. 3 ¶ 8, ex. 64), and showed plaintiffs pictures of an oil tanker that they falsely claimed to own and to use to transport oil from oil refineries (see, e.g., id. ex. 3 ¶ 12, exs. 59-60). Sometimes, when plaintiffs lacked funds to "invest" in defendants' "companies," defendants encouraged plaintiffs to borrow against the equity in their homes, which ultimately led some plaintiffs to lose their homes. (See, e.g., id. ex. 27.) Defendants thus perpetrated an extensively-planned and remarkably well-executed fraud against people they viewed as easy targets, and then apparently fled the country. Defendants acted with reprehensible moral culpability, which warrants imposing punitive damages.

Plaintiffs ask for punitive damages in the amount of 50 times the value of their compensatory damages. (Pls.' Mem. ex. 1.) However, the presumptive

constitutional limit for punitive damages is 10 times the value of compensatory damages. See State Farm Mut. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003); Koch v. Greenberg, No. 07 Civ. 9600(JPO), 2014 WL 1284492, at *22 (S.D.N.Y. Mar. 31, 2014). While defendants' conduct was undoubtedly egregious, plaintiffs fail to submit evidence sufficient to pierce the "zone of the harshest possible punitive damages the Constitution will tolerate." Koch, 2014 WL 1284492 at *22. An award of 10 times the value of plaintiffs' compensatory damages award is sufficient here.

Accordingly, plaintiffs are awarded $95,349,258.40 in total punitive damages, apportioned to each individual plaintiff according to the "Punitive Damages" column of the table in section III of this Order.

c. Prejudgment Interest

The Court may, in its discretion, award prejudgment interest in a federal securities action. See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996). In determining whether to award prejudgment interest, the Court must consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." Wickham Contracting Corp. v. Local Union No. 3, 955 F.2d 831, 833-34 (2d Cir. 1992). The Court should also consider whether an award of prejudgment interest would overcompensate the plaintiff. See id. 835. The Second Circuit has suggested that an award of

prejudgment interest overcompensates the plaintiff when the Court has also awarded punitive damages. See id. at 835.

Plaintiffs have requested $4,958,741.59 in total prejudgment interest.[2] (Pls. Mem. ex. 1.) Because this Court has awarded punitive damages in the maximum amount presumptively allowed by the Constitution, awarding prejudgment interest is unnecessary to fully compensate plaintiffs, who have been made well more than whole. Further, such an award would be inequitable given plaintiffs' already substantial recovery, and it would be unnecessary to serve the remedial purposes of the securities laws, which are well served by the other damages awards. Accordingly, plaintiffs' motion is denied with respect to prejudgment interest.

d. Post-Judgment Interest

The Court must award post-judgment interest on any money judgment recovered in a civil case. See 28 U.S.C. § 1961; STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 83 (2d Cir. 2011). Post-judgment interest is measured "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment," "computed daily to the date of payment" and "compounded annually." 28 U.S.C. § 1961(a)-(b). The Court awards plaintiffs post-judgment interest calculated in this manner.

---

[2] The Court notes that this request is unreasonable to the extent that it uses the N.Y. C.P.L.R. § 5004 interest rate of 9% per annum (Pls.' Mem. ex. 1), which greatly exceeds the interest rates on short-term, risk-free investments that were available in the market during the relevant time period, see See Daily Treasury Bill Rates Data, U.S. Dep't of the Treasury, http://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=billrates (last visited July 31, 2004).

7

e. Costs

Plaintiffs seek to recover their costs for this matter. (Pls.' Mem. 13.) Upon the final adjudication of a private securities action, the Court must review each party's compliance with Federal Rule of Civil Procedure 11(b). 15 U.S.C. § 77u-4(c)(1); see In re Longtop Fin. Tech. Ltd. Sec. Litig., 939 F. Supp. 2d 360, 392 n.242 (S.D.N.Y. 2013). If the Court finds a party did not comply with Rule 11(b), then adverse parties may recover attorneys' fees and costs. 15 U.S.C. § 77u-4(c)(3). Plaintiffs offer no evidence or argument that might support a finding that defendants violated Rule 11(b).[3] (See Pls.' Mem. 13.) Accordingly, plaintiffs' motion is denied with respect to costs.

III. CONCLUSION

The Court awards plaintiffs the following amounts in damages:

| Plaintiff(s) | Compensatory Damages | Punitive Damages |
| --- | --- | --- |
| Coach Management, LLC[4] | $0.00 | $0.00 |
| Megumi Doi | $144,000.00 | $1,440,000.00 |
| Mariko Fujitsuka | $174,546.00 | $1,745,460.00 |
| Takashi and Ayako Hoyama | $166,350.92 | $1,663,509.20 |
| Hideki and Takako Katayama | $280,103.42 | $2,801,034.20 |
| Hitoshi Kawamoto | $1,508,000.00 | $15,080,000.00 |
| Suguru Kawamoto[5] | $0.00 | $0.00 |
| Marutori Food, K.K. | $459,725.00 | $4,597,250.00 |
| Mayumi Miyazaki | $139,780.41 | $1,397,804.10 |
| Yasushi and Yuko Mochizuki | $193,776.00 | $1,937,760.00 |

---

[3] It is hard to imagine what evidence or arguments plaintiffs could possible rely on to support such a finding, given that defendants defaulted and submitted no papers.
[4] Plaintiff Coach Management, LLC did not submit any affidavits or financial documentation to support their claim for damages.
[5] Plaintiff Suguru Kawamoto did not request that the court award him damages; rather, he asked that the Court award damages to his father, Hitoshi Kawamoto, for damages relating to the investments his father made to finance his college education. See Pls.' Decls. ex. 8.

8

| Atsushi Mori | $125,900.00 | $1,259,000.00 |
| Hiroko Nakamura | $1,782,853.48 | $17,828,534.80 |
| Kiyokazu Nakayama | $152,165.28 | $1,521,652.80 |
| Hiroko Nobunaga | $316,984.14 | $3,169,841.40 |
| Yoko Ogura | $81,973.10 | $819,731.00 |
| Kayako Orita | $101,000.00 | $1,010,000.00 |
| Frank Ota | $302,865.93 | $3,028,659.30 |
| Rieko Sakuramoto | $1,000.00 | $10,000.00 |
| Norman Sandler | $101,000.00 | $1,010,000.00 |
| Toshio Sasaki | $183,588.94 | $1,835,889.40 |
| Megumi Seki | $83,000.00 | $830,000.00 |
| Atsushi and Megumi Seto | $140,820.00 | $1,408,200.00 |
| Kazuomi and Toshimi Shibata | $755,836.24 | $7,558,362.40 |
| Masaomi Shibata[6] | $0.00 | $0.00 |
| Nobue Shirai | $512,295.09 | $5,122,950.90 |
| Yasuko Shirai | $1,338,945.67 | $13,389,456.70 |
| SJ Kay LTD | $100,000.00 | $1,000,000.00 |
| Takahisa Suzuki | $36,600.00 | $366,000.00 |
| Yasuhiro Tabata | $110,950.00 | $1,109,500.00 |
| Michiko Takematsu | $82,606.21 | $826,062.10 |
| Masahiro Taniguchi | $116,960.01 | $1,169,600.10 |
| Yuka Tsunoda | $41,300.00 | $413,000.00 |

The Court also awards plaintiffs post-judgment interest under 28 U.S.C. § 1961.

The Clerk of Court is directed to terminate this matter.

SO ORDERED.

Dated:   New York, New York
         August 1, 2014

                                       K B. For
                                       _____
                                       KATHERINE B. FORREST
                                       United States District Judge

---

[6] Plaintiff Masaomi Shibata did not request that the court award him damages; rather, he asked that the Court award damages to his parents, Kazuomi and Toshimi Shibata, for damages relating to the investments his parents made to finance his college education. See Pls.' Decls. ex. 43.

9

Copies to:

Hiromi Hashikura
402 Highwood Ave.
Leonia, NJ  07605

Tetsuya Hashikura
402 Highwood Ave.
Leonia, NJ  07605

Takahito Sakagami
Amiworld, Inc.
EBOA, Ltd.
Punta Pacifica Torre de las Americas
Torre B, Piso 6
Oficina 603, Ciudad de Panama
Republic of Panama